## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| Konstantinos Zografidis,<br><br>                    Plaintiff,<br><br>v.<br><br>Vanessa Richards, *et al.*,<br><br>                    Defendants. | Civil No. 3:22-cv-00631 (AVC)<br><br><br><br>July 5, 2022 |

### RECOMMENDED RULING ON INITIAL REVIEW UNDER 28 U.S.C. § 1915, MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS* [ECF NO. 2], AND MOTION FOR APPOINTMENT OF COUNSEL [ECF NO. 6]

**I.    INTRODUCTION**

This is a lawsuit filed by Konstantinos Zografidis against various defendants, including several Assistant United States Attorneys ("AUSA"), several police officers and detectives, DEA agents, defense attorneys, and other individuals involved in his prior criminal case.  (Compl., ECF No. 1, at 2.)  The complaint seeks damages for alleged constitutional violations by the various defendants.  (*Id.* at 22-23.)  Mr. Zografidis claims that he was "corruptly investigated, arrested, indicted and finally sentenced to prison under a false conspiracy theory . . . created and manufactured by crooked government agents and by discredited [confidential witnesses]."  (*Id.* at 22.)  Additionally, Mr. Zografidis has moved for leave to proceed *in forma pauperis*, or "IFP." (ECF No. 2.)  He has also moved for appointment of counsel.  (ECF No. 6.)

When a plaintiff seeks permission to begin a lawsuit IFP – that is, without paying the filing fee – the court ordinarily conducts two inquiries.  First, it reviews the plaintiff's financial affidavit and determines whether he is unable to pay the fee.  28 U.S.C. § 1915(a).  Second, to ensure that

the plaintiff is not abusing the privilege of filing a free lawsuit, the court examines his complaint to determine whether it "is frivolous" or "fails to state a claim on which relief may be granted." 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii).  If the complaint is indeed frivolous or fails to state a claim, the court must dismiss the case.  *Id*.

Senior United States District Judge Alfred v. Covello referred this case to me – United States Magistrate Judge Thomas O. Farrish – to conduct these inquiries.  (ECF No. 7.)  I have reviewed the complaint, the IFP motion and the accompanying affidavit, and the motion for appointment of counsel.  In the first step of my analysis, **I recommend that the motion for leave to proceed IFP be denied** because Mr. Zografidis has not demonstrated that he is unable to pay the filing fee.  (*See* discussion, Section III *infra*.)  Mr. Zografidis has a weekly income beyond that which would normally qualify for IFP status and has a more than sufficient balance in his checking account to pay the filing fee.  (ECF No. 2, at 3-4.)  He has thus failed to demonstrate that paying the filing fee would constitute a serious hardship.

In the second step of my analysis, **I recommend that Mr. Zografidis' complaint be dismissed,** for several reasons.  First, his claims are well beyond the applicable statute of limitations.  Second, even if they were not, his claims are barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994).  Additionally, many of the Defendants are immune from suit. For these reasons, and for the other reasons identified below, I recommend that his complaint be dismissed.

Finally, **I recommend that his motion for appointment of counsel be denied**, as he has not demonstrated that he is indigent or that his claims have a likelihood of success.

II.   BACKGROUND

A.   Criminal Conviction

Mr. Zografidis' allegations stem from his 2012 federal criminal case.  (*See United States v. Zografidis*, 3:12-cr-00117-JAM-3 (D. Conn.).)  On June 24, 2014, Mr. Zografidis pled guilty to one count of conspiring to possess with intent to distribute and to possessing with intent to distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C).  (*Id.* at ECF No. 944.)  On January 27, 2016, Judge Meyer sentenced Mr. Zografidis to 72 months of imprisonment followed by a three-year term of supervised release.  (*Id.* at ECF No. 1313.)  The Second Circuit affirmed his conviction on appeal.  *United States v. Papadakos*, 729 F. App'x 41 (2d Cir. 2018).  The Supreme Court denied certification of that appeal on October 1, 2018.  *Zografidis v. United States*, 139 S. Ct. 166 (2018).

B.   Prior Litigation

While in prison, Mr. Zografidis filed two prior § 1983 actions.  (*Konstantinos Zografidis v. Joseph Dimyan, et al.*, No. 3:14-cv-666-RNC (D. Conn.); *Konstantinos Zografidis v. Norwalk Police Dept, et al.*, No. 3:14-cv-667-RNC (D. Conn).)  In the first one, he named Joseph Gega, his former landlord, and Joseph Dimyan, his former commercial attorney (both of whom are named in the present action), claiming that they conspired to "defraud [him] of [his] business lease agreement."  (*Zografidis v. Dimyan*, No. 3:14-cv-666-RNC, Compl., ECF No. 1, at 2.)  Judge Chatigny conducted an initial review of the complaint pursuant to 28 U.S.C. § 1915(e)(2) and dismissed the action for failure to state a claim, explaining there was no allegation that Dimyan or Gega were state or local officials or conspired with state or local officials to deprive him of his rights under federal law, which is a requirement to bring a § 1983 against a private actor.  (*Id.*, ECF No. 7.)  Judge Chatigny also wrote that "for a person who has been defrauded in connection

3

with a lease, any legal remedy for the alleged fraud usually is available only in state court, not federal court." (*Id.*)

In his second § 1983 action, Mr. Zografidis named the Norwalk and Westport Police Departments, Dimyan again, and Demetros Karipidis, a co-defendant in the underlying criminal action, alleging that his arrest was based on false testimony and fabricated evidence in violation of his Fourth and Fifth Amendment rights. (*Zografidis v. Norwalk Police Dept.*, No. 3:14-cv-667-RNC, Compl., ECF No. 1, at 3; Amended Compl., ECF No. 5.) Judge Chatigny again conducted an initial review of the complaint and dismissed the case. (*Id.*, ECF No. 6.) As for the police departments, he explained that Mr. Zografidis failed to allege that the alleged deprivations were the result of a departmental policy, practice, or custom, a necessary element of a § 1983 claim against a municipal police department. (*Id.* at 3; *see* discussion, Section IV B 3 *infra*.) As for Dimyan and Karipidis, he again explained that Mr. Zografidis was lacking the necessary allegations that Dimyan and Karipidis were state or local officials or conspired with state or local officials to deprive him of his rights under federal law. (*Id.* at 4.)

Mr. Zografidis also filed a habeas petition under 28 U.S.C. § 2255 on September 14, 2018. (*Zografidis v. USA*, No. 3:18-cv-1566-JAM (D. Conn.).) As he does in his present suit, he alleged that his conviction was improperly based on ineffective assistance of counsel, various Fourth Amendment violations, perjury, manufactured evidence, and prosecutorial misconduct by AUSA Vanessa Richards. (*Id.*, Petition, ECF No. 1, at 6-29.) Judge Meyer denied the motion for post-conviction relief, explaining that Mr. Zografidis "has not stated plausible grounds to conclude that his conviction for conspiring to distribute cocaine was secured in violation of his constitutional rights." (*Id.* ECF No. 62, at 9.) The Second Circuit dismissed his appeal from this denial and the Supreme Court subsequently denied certification. *Zografidis v. United States*, No. 21-1681, 2021

WL 7540171, at *1 (2d Cir. Nov. 19, 2021), *cert. denied*, No. 21-7395, 2022 WL 1611822 (U.S. May 23, 2022).

### C.    Present Allegations

Mr. Zografidis raises essentially the same allegations as in his prior actions, albeit with substantially more defendants this time.  He writes that he was "corruptly investigated, arrested, indicted and finally sentenced to prison under a false conspiracy theory, in an involvement with Demetrios Papadakos, created and manufactured by crooked government agents and by discredited [confidential witnesses].  The government misinformed the court with an ill-intent by fabricating the evidence, especially the four alleged drug buys/sales against myself and [confidential witness three] that were meritless and falsified.  The government agents also provided intercepted and recorded conversations, as claimed in their sworn affidavit(s), used as evidence against me, that were warrantless and 'non-consensual' in order to seek the warrant from the court to grant them the rights to wire-tap my cell phone, [target telephone one].  The government also produced witnesses to falsely testify against me in court during cross-examination, while under oath." (Compl., ECF No. 1, at 22.)  While his complaint is largely related to his criminal conviction, he also mentions the lease dispute that was the basis of the first purported § 1983 action, as well as a grievance proceeding related to that dispute that he tried to initiate against Dimyan.  (*Id.*, at 15-17.)  Additional details regarding specific defendants are set forth below.

### D.    Background to IFP Status

Mr. Zografidis states that he is self-employed and earns $1,200.00 a week, which would result in a yearly salary of approximately $62,400 before taxes.  (ECF No. 2, at 3.)  He also states that he owns a 2003 GMC truck, which he values at $1,000 or less, and that he has $362.46 in a savings or similar account and $10,991.09 in a checking account.  (*Id.* at 4.)  He reports $3,874.49

in monthly obligations and expenses, $1,800 of which is for "car gas, taxes, [and] painting supplies." (*Id.* at 4.)  He does not claim any outstanding debts.  (*Id.* at 5.)

## III.    THE FIRST INQUIRY:  IFP STATUS

When a plaintiff files a complaint in federal court, ordinarily he must pay filing and administrative fees totaling $402.  *See* 28 U.S.C. § 1914.  District courts may nevertheless authorize commencement of an action "without prepayment of fees . . . by a person who submits an affidavit that includes a statement . . . that the person is unable to pay such fees."  28 U.S.C. § 1915(a)(1); *see also Coleman v. Tollefson*, 575 U.S. 532, 135 S. Ct. 1759, 1761 (2015) (explaining that plaintiffs who qualify for *in forma pauperis* status "may commence a civil action without prepaying fees or paying certain expenses").

To qualify as "unable to pay," the plaintiff does not have to demonstrate absolute destitution, *see Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) (per curiam), but he does need to show that "paying such fees would constitute a serious hardship." *Fiebelkorn v. U.S.*, 77 Fed. Cl. 59, 62 (2007).  The United States Supreme Court has said that a plaintiff makes a "sufficient" showing of inability to pay when his application demonstrates that he  "cannot because of his poverty pay or give security for the costs and still be able to provide himself and his dependents with the necessities of life." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

In this case, the Plaintiff's *in forma pauperis* affidavit states that he earns $4,800 a month against $3,874.49 in monthly expenses and obligations.  (ECF No. 2, at 3-4.)  His gross monthly income therefore exceeds his stated monthly expenses by nearly $900.  Even assuming that his monthly income is much closer to his monthly obligations after taxes, Mr. Zografidis reports that he has over $10,000 in his checking account.  This is more than enough to cover the filing fee of

$402.00.  On the record before the Court, I am unable to conclude that this is a case in which the plaintiff is being "made to choose between abandoning a potential meritorious claim or foregoing the necessities of life."  *Potnick*, 701 F.2d at 244.  I therefore recommend that his motion be denied.

## IV.   THE SECOND INQUIRY:  REVIEW OF THE COMPLAINT UNDER 28 U.S.C. § 1915(E)(2)(B)

When a plaintiff neither pays the filing fee nor demonstrates that he is unable to do so, some courts dismiss his case for that reason alone – in other words, without proceeding to the second step of the Section 1915 analysis.  *E.g.*, *Richardson v. Napoli*, No. 9:09-cv-1440 (TJM) (DEP), 2010 WL 1235383 (N.D.N.Y. Mar. 30, 2010).  Other courts have held that it is more efficient to conduct both inquiries at once.  *See*, *e.g.*, *Bank of N.Y. v. Consiglio*, No. 3:17-cv-01048 (CSH) (SALM), 2017 WL 9480197, at *3 (Oct. 2, 2017) (conducting Section 1915(e)(2)(B) analysis even though plaintiff's *in forma pauperis* motion failed under Section 1915(a)).  Although Mr. Zografidis has not gotten past the first inquiry, in the interest of efficiency I will conduct the second inquiry now.

### A.    General Principles of Review under 28 U.S.C. § 1915

Section 1915(e)(2)(B) instructs federal district courts to dismiss IFP complaints if any of three circumstances apply.  First, a district court "shall dismiss the case at any time if the court determines that . . . the action . . . is frivolous . . . ."  28 U.S.C. § 1915(e)(2)(B)(i).  Second, the court must dismiss a complaint that "fails to state a claim on which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).  Third, "the court shall dismiss the case" if it finds that the complaint "seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(iii).  In this section, I will discuss each of these three bases for dismissal.

#### 1.    "Frivolous"

A complaint is "frivolous" when it is entirely without a factual or legal basis.  As the Court of Appeals has explained, an "action is 'frivolous' for § 1915(e) purposes if it has no arguable

basis in law or fact, as is the case if it is based on an 'indisputably meritless legal theory.'" *Montero v. Travis*, 171 F.3d 757, 759 (2d Cir. 1999) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325-27 (1989)). "Frivolous" complaints include those that are based on "fanciful factual allegation[s]," *Neitzke*, 490 U.S. at 325, as well as those in which a dispositive defense clearly exists on the face of the complaint. *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995).

### 2. "Fails to state a claim on which relief may be granted"

A complaint fails to state a claim when it lacks "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Facial plausibility," in turn, requires the pleading of "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. When an IFP complaint lacks this "facial plausibility," it is subject to dismissal. 28 U.S.C. § 1915(e)(2)(B)(ii); *Gordon v. Suffolk Cty.*, 792 F. App'x 128, 129 (2d Cir. 2020) (summary order). "[T]the pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). A complaint containing only "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation and internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (citation, internal quotation marks and brackets omitted).

These and other pleading rules are applied liberally in favor of *pro se* plaintiffs. "Since most *pro se* plaintiffs lack familiarity with the formalities of pleading requirements," courts must "construe *pro se* complaints liberally, applying a more flexible standard to evaluate their sufficiency than we would when reviewing a complaint submitted by counsel." *Lerman v. Bd. of Elections*, 232 F.3d 135, 139-40 (2d Cir. 2000). In other words, courts interpret *pro se* complaints

"to raise the strongest arguments they suggest." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (internal quotation marks omitted). Because *pro se* litigants "cannot be expected to know all of the legal theories on which they might ultimately recover," a reviewing court's "imagination should be limited only by [the] factual allegations" when determining what legal claims the complaint suggests. *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005). As Judge Covello has written, "[a]lthough courts still have an obligation to liberally construe a *pro se* complaint, the complaint must include sufficient factual allegations to meet the standard of facial plausibility." *Vega v. Univ. of Conn. Med. Ctr.*, No. 3:11-cv-1864 (AVC), 2012 WL 1825381, at *1 (D. Conn. May 16, 2012) (internal citation omitted).

### 3.   "Seeks monetary relief against a defendant who is immune from such relief"

An IFP complaint must be dismissed if it "seeks monetary relief against a defendant who is immune from such relief," 28 U.S.C. § 1915(e)(2)(B)(iii), and this principle is especially relevant when the defendant is a state agency because states are generally immune from suits for money damages. As will be discussed further below, "each state is a sovereign entity in our federal system," and "it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent." *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54 (1996) (internal quotation marks omitted). This immunity is "not absolute," and does not apply when Congress abrogates it by statute or when the state agrees to be sued. *Close v. N.Y.*, 125 F.3d 31, 36 (2d Cir. 1997). But when an IFP plaintiff sues a state for money damages in federal court, and the state's immunity has neither been abrogated by Congress nor waived by the state itself, the suit is properly dismissed. 28 U.S.C. § 1915(e)(2)(B)(iii); *see also Inkel v. Conn.*, No. 3:17-cv-1400 (MPS), 2019 WL 1230358, at *5 (D. Conn. Mar. 15, 2019); *Lyon v. Jones*, 168 F. Supp. 2d 1, 5-6 (D. Conn. 2001).

**B.      Application of These Principles to Mr. Zografidis' Complaint**

When reviewing *pro se* IFP complaints under Section 1915(e)(2), courts examine the factual allegations and consider what theories of recovery they suggest, without limiting themselves to the theories expressly identified by the plaintiff.  *See Phillips*, 408 F.3d at 130. Applied to this case, this means that my analysis should not stop with the potential causes of action explicitly identified in Mr. Zografidis' complaint.   Mr. Zografidis has asserted jurisdiction pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), which allows certain constitutional tort actions to be brought against *federal* officials. (Compl., ECF No. 1, at 21-22); *see Arar v. Ashcroft*, 585 F.3d 559, 572 (2d Cir. 2009) ("In *Bivens* . . . the Supreme Court recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights.") (internal quotation marks omitted).   Mr. Zografidis writes that his Fourth, Fifth, Sixth, and Fourteenth Amendment Rights, and his "privileges and immunities" were violated by the Defendants' conduct.   An action under *Bivens* is considered a "nonstatutory federal counterpart of a civil rights action pursuant to 42 U.S.C. § 1983."  *Style v. McGuire*, No. 3:17-cv-502 (SRU), 2017 WL 3841647, at *1 (D. Conn. Sept. 1, 2017).   Section 1983 allows a plaintiff to sue *state* employees, or individuals acting under color of state law, for deprivations of federal statutory and constitutional rights.  *See* 42 U.S.C.A. § 1983; *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 105, 110 S. Ct. 444, 448, 107 L. Ed. 2d 420 (1989).   Since Mr. Zografidis names both federal and state individuals and entities, I will interpret his complaint as raising claims under both *Bivens* and § 1983.  *See Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995) ("Because the two actions share the same 'practicalities of litigation', federal courts have typically incorporated § 1983 law into *Bivens* actions.") (quoting

*Burnett v. Grattan*, 468 U.S. 42, 50 (1984)).  Both claims should be dismissed, however, for the reasons that follow.

Before analyzing his complaint, I briefly set forth the pleading requirements for § 1983 and *Bivens* actions.  To prevail on a claim under § 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law. 42 U.S.C. § 1983.  "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir.1993).  The requirements for a *Bivens* claim are substantially similar.  "A plaintiff bringing a *Bivens* claim must show that: (1) he or she has been deprived of a constitutional right by a federal official and (2) in depriving him or her of that right, the federal official acted under color of federal law." *Davis v. United States*, 430 F. Supp. 2d 67, 78 (D. Conn. 2006).

### 1.      Statute of Limitations

All of Mr. Zografidis' claims should be dismissed, primarily because they are outside of the applicable statute of limitations.

Mr. Zografidis' claims are subject to a three-year statute of limitations.  *Bivens* actions and § 1983 claims have a three-year statute of limitations in the District of Connecticut.  *See Doe v. United States*, No. 3:19-cv-01649 (SALM), 2022 WL 903368, at *3 (D. Conn. Mar. 28, 2022).  The statute of limitations for both actions is borrowed from the equivalent state statute for tort cases.  *See Van Eck v. Cimahosky*, 329 F. Supp. 2d 265, 272 (D. Conn. 2004) (citing *Chin v. Bowen*, 833 F.2d 21, 23-24 (2d Cir. 1987); *Leonhard v. United States*, 633 F.2d 599, 616-17 (2d Cir. 1980) ("[F]or both *Bivens*-type actions and § 1983 actions we must borrow the most appropriate state statutes of limitations.").  Under Connecticut General Statute § 52-577, the

analogous state statute for torts, the applicable statute of limitations is three years from the point

of accrual.  *Bakowski v. Kurimai*, 387 F. App'x 10, 11 (2d Cir. 2003); *Pinkston v. Connecticut*,

No. 3:09-cv-633 (JCH), 2009 WL 2852907, at *2 (D. Conn. Sept. 2, 2009) ("The general three-

year personal-injury statute of limitations period set forth in Connecticut General Statutes § 52–

577 has been uniformly found to be the appropriate one for federal civil rights actions.").

The next step is to determine when the three-year statute of limitations began to run.

"While state law supplies the statute of limitations period, federal law determines when a federal

claim accrues," or, in other words, when the statute of limitations period begins to run.  *Kronisch*

*v. United States*, 150 F.3d 112, 123 (2d Cir. 1998) (citation and quotation marks omitted);

*Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997).  Generally speaking, "[a] *Bivens* claim accrues

under federal law for statute of limitations purposes when a plaintiff either has knowledge of his

or her claim or has enough information that a reasonable person would investigate and discover

the existence of a claim."  *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015); *Ormiston*, 117

F.3d at 71 (applying same rule to §1983 claim); *Bailey v. Tricolla*, No. CV-94-4597 (CPS), 1995

WL 548714, at *3 (E.D.N.Y. Sept. 12, 1995) ("The statutory period for bringing a § 1983 action

accrues on the day when plaintiff knows or has reason to know' of the injury which is the basis of

his action.") (internal quotation marks omitted).  Put another way, "it is the standard rule that

[accrual occurs] when the plaintiff has a 'complete and present cause of action,' . . . that is, when

the plaintiff can file suit and obtain relief."  *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (internal

citations and quotation marks omitted).

I need not determine precisely when Mr. Zografidis had sufficient knowledge of his claims,[1] as he obviously had sufficient knowledge of these claims at the time that he filed his prior civil actions in 2014 and 2018.  Mr. Zografidis filed this complaint on May 4, 2022.  (Compl., ECF No. 1.)  So, absent tolling or a deferred accrual date, he can only recover for events happening after May 4, 2019.  He filed his two prior § 1983 complaints on May 9, 2014, one of which contained essentially the same allegations as the present case.  (*Zografidis v. Norwalk Police Dept*, No. 3:14-cv-667-RNC, Compl., ECF No. 1.)  While the initial complaint in that case only named the Norwalk Police Department, the "CT State Police Task Force," and Joseph Dimyan, Mr. Zografidis wrote "I would like to explain . . . how I was violated . . . in numerous ways by our local police (Norwalk Police Dept. in CT), federal agents (DEA), the U.S. District Attorney's Office – Vanessa Richards, and the Danbury Grievance Counsel."  (*Id.* at 7.)  Mr. Zografidis then filed his habeas petition under 28 U.S.C. § 2255 on September 14, 2018.  (*Zografidis v. USA*, No. 3:18-cv-1566-JAM, ECF No. 1.)  As he does in his present suit, he alleged that his conviction was improperly based on ineffective assistance of counsel, various Fourth Amendment violations, perjury, manufactured evidence, and prosecutorial misconduct by AUSA Vanessa Richards.  (*Id.*

---

[1]     Mr. Zografidis' claims have slightly varied accrual dates.  To the extent he raises Fourth Amendment improper search and seizure claims, such claims accrue when the act of searching the property is complete.  *See Spencer v. Connecticut*, 560 F. Supp. 2d 153, 159 (2008).  Section 1983 claims premised on false arrest or false imprisonment accrue "at the time the [plaintiff] becomes detained pursuant to legal process" or "appear[s] before the examining magistrate and [is] bound over for trial."  *Wallace v. Kato*, 549 U.S. 384, 392-97 (2007).  In any event, the various allegedly unconstitutional searches complained of in his complaint all occurred in 2012, he was first arrested in May of 2012, and was arraigned before United States Magistrate Judge Holly B. Fitzsimmons on June 21, 2012, all well beyond the statute of limitations.  (S*ee e.g.*, Compl., ECF No. 1, at 3, 6, 10, 20; *USA v. Zografidis*, 3:12-cr-117-JAM-3, ECF No. 100.)  To the extent that Mr. Zografidis raises claims of fabricated evidence or malicious prosecution, however, such claims would not accrue until his criminal proceedings terminate in his favor.  *See DiBlasio v. City of New York*, 102 F.3d 654, 658 (2d Cir.1996); *McDonough v. Smith*, 139 S. Ct. 2149 (2019).  Because this has not occurred, such claims are barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994).  (*See* discussion, Section IV.B.2 *infra*.)

at 6-29.)  Given that Mr. Zografidis clearly had knowledge of the present claims well beyond three years from the filing of his complaint, his claims are outside of the three-year statute of limitations applicable to § 1983 and *Bivens* claims and should be dismissed for failure to state a claim.

Finally, I note that while a statute of limitations is ordinarily raised as an affirmative defense, "where it is clear from the face of the complaint that a claim is barred by the applicable statute of limitations, the claim is subject to dismissal for failure to state a claim on 28 U.S.C. § 1915(e)(2)(B) review." *Wrobleski v. Miller*, No. 3:19-cv-0876 (GLS/ML), 2019 WL 6496723, at *4 (N.D.N.Y. Dec. 2, 2019), *report and recommendation adopted in part, rejected in part*, No. 3:19-cv-876 (GLS/ML), 2020 WL 219221 (N.D.N.Y. Jan. 15, 2020) (citing *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995).  A court should not, however, dismiss a complaint with prejudice on the basis of an anticipated statute of limitations defense without granting the plaintiff notice and an opportunity to be heard.  *See Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007).  Thus, I recommend that Mr. Zografidis' claims be dismissed with leave to amend his complaint to show why claims arising out of events that occurred before May 2019 are timely.  *See Staton v. Holzbach*, No. 3:20-cv-631 (SRU), 2020 WL 6119382, at *2 (D. Conn. Oct. 16, 2020), *appeal dismissed*, No. 20-3986 (L), 2021 WL 3783097 (2d Cir. Aug. 19, 2021) (dismissing § 1983 complaint on initial review without prejudice and offering plaintiff opportunity to replead).

## 2.   *Heck v. Humphrey*

To the extent Mr. Zografidis raises claims of malicious prosecution, false imprisonment, or fabricated evidence related to his conviction, such claims have not yet accrued and would be precluded under the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994).  In *Heck*, the Supreme Court held that in order for a plaintiff "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render

a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has

been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal

authorized to make such determination, or called into question by a federal court's issuance of a

writ of habeas corpus." *Id.* at 486-87.  The court further held that "[a] claim for damages bearing

that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under

§ 1983." *Id.* at 487 (emphasis in original).  For this reason, "the Second Circuit has recognized

that the statute of limitations for a malicious prosecution claim brought pursuant to § 1983 begins

to run at the time a criminal proceeding terminates in favor of the accused." *Bakowski v. Kurimai*,

No. 3:98-cv-2287 (DJS), 2000 WL 565230, at *5 (D. Conn. Mar. 20, 2000), *aff'd*, 387 F. App'x 10

(2d Cir. 2003) (citing *DiBlasio v. City of New York*, 102 F.3d 654, 658 (2d Cir. 1996).  Thus, under

*Heck* and its progeny, if a conviction has not been invalidated previously, a "§ 1983 action is barred

. . . no matter the target of the prisoner's suit . . . *if* success in that action would necessarily

demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-

82 (2005) (emphasis in original).

        The Second Circuit has also held that *Heck* applies to *Bivens* actions as well as those under

§ 1983.  *Tavarez*, 54 F.3d at 110 (affirming dismissal of *Bivens* action under *Heck* where plaintiff

failed to demonstrate that his conviction or sentence had been invalidated); *Viola v. Bryant*, No.

3:17-cv-00853 (CSH), 2017 WL 2676407, at *5 (D. Conn. June 21, 2017) ("It is well established

that *Heck* also applies to *Bivens* actions.").  I also note that courts frequently apply *Heck* to dismiss

cases at the initial review stage.  *See id.*; *McLean v. City of New Haven*, No. 3:21-cv-552 (JAM),

2022 WL 1624049, at *3 (D. Conn. May 23, 2022); *Gonzalez v. Yepes*, No. 3:19-cv-00267 (CSH),

2019 WL 2603533, at *4 (D. Conn. June 25, 2019); *Peterson v. Onondaga Cnty., N.Y.*, No. 5:14-

cv-01260, 2015 WL 2401661, at *4 (N.D.N.Y. May 19, 2015).

Therefore, if Mr. Zografidis' success on his claims would necessarily imply the invalidity of his sentence, his claims must be dismissed because he has not demonstrated or alleged that his conviction has been reversed, expunged, or declared invalid.  (*See generally* Compl., ECF No. 1.) Here, Mr. Zografidis claims that the AUSA's that worked on his case "used corrupt and unconstitutional methods to investigate me . . . [and] enter into my apartment," and "convicted me under a false criminal conspiracy collusion . . . under fabricated evidence, hypothetical and unrealistic drug amounts, and produced witnesses who perjured themselves." (*Id.* at 2.)  He alleges that the state police officers and federal task force officers drafted fraudulent affidavits and police reports, executed fraudulent search warrants, and lied under oath at various court proceedings leading to his conviction.  (*Id.* at 6-12.)  He also alleges that his court appointed attorneys were corrupted and colluded with the government.  (*Id.* at 13-15.)

These are precisely the sort of claims that are contemplated by *Heck*, as they would imply the invalidity of his conviction.  "Claims for both false arrest and malicious prosecution both call into question the validity of a conviction, because false arrest requires a lack of probable cause and malicious prosecution requires probable cause and a termination of the proceedings in the defendant's favor."  *McFadden v. New York*, No. 10-cv-141 (RRM / CLP), 2011 WL 6813194, at *4 (E.D.N.Y. Dec. 28, 2011); *see also D.S. v. City of New York*, 736 F. App'x 284, 287 (2d Cir. 2018) (applying *Heck* to preclude § 1983 claims because "asserting that [plaintiff] was unlawfully seized, or coerced into confessing, or denied effective counsel in violation of constitutional rights advanced under § 1983 necessarily implies that his assault conviction was unlawfully obtained"); *McKay v. E. Hartford Police Dep't*, No. 3:16-cv-01954 (JAM), 2017 WL 4247383, at *3 (D. Conn. Sept. 25, 2017) (applying *Heck* to preclude prisoner's claims for false arrest, malicious prosecution, and unlawful search and seizure).  The Supreme Court has also held that *Heck* applies to cases

alleging fabricated evidence. *McDonough v. Smith*, 139 S.Ct. 2149, 2156-57; *see also Warren v. Fischl*, 674 F. App'x 71, 72 (2d Cir. 2017) (applying *Heck* to preclude prisoner's claim against police officers and prosecutors for unreasonable search and seizure and fabrication of evidence).

Thus, success on Mr. Zografidis' claims would plainly call into question the validity of his sentence because that sentence can "not be reconciled with the claims of his civil action." *Poventud v. City of New York*, 750 F.3d 121, 132 (2d Cir. 2014). Accordingly, because Mr. Zografidis has failed to allege that his conviction has been invalidated in any manner, to the extent that he seeks damages under § 1983 and *Bivens* for malicious prosecution, fabrication of evidence, false arrest, and false imprisonment, those claims must be dismissed as not cognizable.

I note that not all Fourth Amendment claims under § 1983 and *Bivens* are barred by *Heck*. *See Fifield v. Barrrancotta*, 353 Fed. Appx. 479, 480-81 (2d Cir. 2009) (explaining that *Heck* bars Fourth Amendment claims only where conviction was dependent on evidence derived from the challenged search or arrest); *Bowles v State*, 37 F. Supp. 2d 608, 611-12 (S.D.N.Y. 1999) (explaining that *Heck* does not bar a malicious prosecution claim if the plaintiff was acquitted of a related charge that is "sufficiently distinct" from the conviction). I need not consider the applicability of these exceptions, however, as any such claims would have accrued at the time of the challenged search, arrest, or confinement and would plainly be barred by the statute of limitations. For that reason, I recommend that Mr. Zografidis' claims be dismissed in their entirety under both the statute of limitations applicable to the claims and the doctrine of *Heck v. Humphrey*.

### 3.    Additional Grounds for Dismissal

While the grounds I have identified are sufficient to recommend dismissal of Mr. Zografidis' claims in their entirety, because I also recommend that he be given an opportunity to replead, I will highlight additional deficiencies with his claims and grounds for dismissal.

### a.   Claims against the U.S. Attorney's Office

Mr. Zografidis has named the U.S. Attorney's office of Bridgeport.  (Compl., ECF No. 1, at 19.)  The U.S. Attorney's Office, however, is immune from *Bivens* actions.  "The federal government itself and its agencies are immune from suit absent a waiver of sovereign immunity, and the Supreme Court has specifically declined to waive such immunity to allow a claim against a federal agency under *Bivens*."  *Juste v. Vilardo*, No. 6:17-cv-06842 (EAW), 2018 WL 401522, at *4 (W.D.N.Y. Jan. 12, 2018) (citing *F.D.I.C. v. Meyer*, 510 U.S. 471 (1994)); *Ige v. U.S. Attorney's Off.*, 104 F.3d 353 (2d Cir. 1996) ("It is clear . . . that [plaintiff] cannot maintain a *Bivens* action against the United States Attorney's Office.").  His claims against the U.S. Attorney's office must be dismissed.

### b.   Claims against Municipal Police Departments

Mr. Zografidis has named several individual municipal police officers as well as the Norwalk and Westport Police Departments.  (Compl., ECF No. 1, at 6-8, 11-13, 19, 20.)  While § 1983 actions can be permitted against individual officers, the Norwalk and Westport Police Departments are immune from suit in this instance.

These claims must be dismissed as police departments are merely administrative arms of municipalities.  "It is well established that [a] police department is an administrative arm of [a] municipal corporation, and cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity."  *Kelly v. Colonie Police Dep't*, No. 8:20-cv-721 (GTS/CFH), 2020 WL 6465448, at *3 (N.D.N.Y. Sept. 21, 2020), *report and recommendation adopted*, No. 8:20-cv-0721 (GTS/CFH), 2020 WL 6445901 (N.D.N.Y. Nov. 3, 2020) (internal quotation marks omitted); *see also DeLee v. New York*, No. 5:20-cv-549 (GTS/ATB), 2020 WL 4288455, at *4 (N.D.N.Y. June 12, 2020), *report and recommendation*

*adopted*, No. 5:20-cv-0549 (GTS/ATB), 2020 WL 4284131 (N.D.N.Y. July 27, 2020) (collecting cases dismissing claims against police departments). "Section 1983 provides that an action may only be maintained against a 'person' who has deprived another of rights under the 'Constitution and Laws.'" *Hester-Bey v. Police Dep't*, No. 12-cv-3320 (KAM), 2012 WL 4447383, at *1 (E.D.N.Y. Sept. 24, 2012). A municipal Police department is not a "person" within the meaning of Section 1983 and is, therefore, not a proper defendant. *Id*.

To the extent that Mr. Zografidis' claims may be interpreted as a claim against the towns of Norwalk or Wesport, he has failed to state a claim. A municipality may only be named as a defendant in a Section 1983 case in limited circumstances. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983. The Court held that a "municipality cannot be held liable *solely* because it employs a tortfeasor." *Id.* at 691 (emphasis in original). Instead, a municipality can only be held liable under Section 1983 when the deprivation of constitutional rights was caused by "execution of a government's policy or custom." *Id.* at 694. Such "[o]fficial municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "Municipal liability may also be shown by establishing that a policymaking official ordered or ratified the employees' actions either expressly or tacitly." *DeLee v. New York*, 2020 WL 4288455, at *5. Finally, a municipality's failure to train employees on their legal duty to avoid violating citizen's rights may rise to the level of a municipal policy for the purposes of Section 1983. *Connick*, 563 U.S. at 61.

Mr. Zografidis has not alleged that any of these scenarios occurred.   There are no allegations that his alleged constitutional deprivations were the result of municipal policy.  Thus, his claims against the Norwalk and Westport Police Departments must be dismissed.

c.     *Claims against the DEA*

Likewise, Mr. Zografidis has also named a number of federal DEA agents, and the DEA Bridgeport Narcotics task force itself.   (Compl., ECF No. 1, at 8-12, 20.)  Suits against federal agents are contemplated by *Bivens*, but the DEA is immune from suit.  "Congress must authorize suits against its agencies. . . .  Since Congress not chosen to authorize suits against DEA, the claims against DEA must be dismissed." *Sterling v. United States*, 749 F. Supp. 1202, 1206 n.5 (E.D.N.Y. 1990) (internal citation omitted); *Philippeaux v. United States*, No. 19-cv-3221 (CM), 2019 WL 2082549, at *3 (S.D.N.Y. May 13, 2019) (construing complaint against DEA as against individual officers, noting that federal agencies may not be sued under *Bivens*).  A plaintiff bears the burden to establish that a claim falls within an applicable waiver of sovereign immunity, *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 200), and Mr. Zografidis has made no such showing.  His claims against the DEA must be dismissed.

d.     *Claims against attorneys*

Mr. Zografidis has also named Attorney Paul Thomas, his first court appointed attorney, Attorney Frank O'Reilly, his second court appointed attorney, and Attorney Elliot Warren, who represented a co-defendant in the underlying criminal action.  (Compl., ECF No. 1, at 13-15.)  He alleges that Attorney Thomas colluded with the government, that Attorney O'Reilly assisted the government in getting him to plead guilty, and that Attorney Warren colluded with the government and coerced a co-defendant to lie about Mr. Zografidis' involvement in the case.  (*Id.*)

Defense attorneys are ordinarily not subject to suit under § 1983 or *Bivens*.  "[I]t is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under [§ 1983]."  *Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997).  "The same logic precludes a finding that private attorneys are federal agents for purposes of a *Bivens* claim."  *O'Donoghue v. United States Soc. Sec. Admin.*, 828 F. App'x 784, 787 (2d Cir. 2020); *see also McCurvin v. Law Offices of Koffsky & Walkle*y, 2003 WL 223428, at *3 (D. Conn. Jan. 27, 2003) (attorneys appointed by federal court "did not assume a federal status by being appointed defense counsel" for purposes of a *Bivens* action).  The complaint does not state whether Attorney Warren was court-appointed or privately hired by the co-defendant, but the analysis would not change.  *Delarosa v. Serita*, No. 14-cv-737 (MKB), 2014 WL 1672557, at *3 (E.D.N.Y. Apr. 28, 2014) ("[P]ublic defenders, including Legal Aid attorneys, court-appointed counsel and private attorneys do not act under the color of state law merely by virtue of their position.").

Although these three attorneys were clearly not federal actors, courts have recognized that court appointed attorneys can be held liable under § 1983 or *Bivens* if they conspire with government officials to violate a plaintiff's constitutional rights.  *Fisk v. Letterman*, 401 F. Supp. 2d 362, 378 (S.D.N.Y. 2005); *Faison v. Maccarone*, No. 11-cv-0137 (JFB / ETB), 2012 WL 681812, at *14 n.20 (E.D.N.Y. Mar. 1, 2012) (analyzing *Bivens* conspiracy claim against defense attorneys under § 1983 jurisprudence).  To establish liability in this way, a plaintiff must demonstrate that the private actor was a "willful participant in joint activity with the state or its agents."  *Id.* at *14.

Mr. Zografidis has not plausibly alleged such willful participation.  He alleges that Attorney Thomas "was in collusion with the government by assisting them to coerce me to proffer

on four different occasions," "he placed fear and despair in me" by advising that the government had sufficient evidence, he "stayed quiet" in meetings with AUSA's, and he told Mr. Zografidis that the government was asking about a phone conversation that allegedly occurred before the government had tapped his cell phone.  (Compl., ECF No. 1, at 13-14.)  As for Attorney O'Reilly, Mr. Zografidis alleges that he "never acted on any of the facts I provided him," "misled me and lied to me about my immigration status," "made a promise to me that he would take my case to trial" but failed to, "betrayed the trust and the agreement we both had, and "assist[ed] the government to fulfill their guilty pleas."  (*Id.*, at 14.)  As for Attorney Warren, Mr. Zografidis writes only that he "corruptively aided and abetted the government by coercing my [co-defendant] to lie during his guilty to plea, and to admit that I was buying narcotics."  (Compl., ECF No. 1, at 15.)

These cursory allegations, without any supporting facts, are insufficient to allege a conspiracy among defense counsel and the government.  "A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity."  *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002); *see also Faison*, 2012 WL 681812, at *15 (dismissing conspiracy allegations where complaint was "nothing more than a compendium of conclusory, vague, and general allegations of a conspiracy to deprive him of constitutional rights").  To be sure, "[a] plaintiff 'is not required to list the place and date of defendants meetings and the summary of their conversations when he pleads conspiracy,' . . . but the pleadings must 'present facts tending to show agreement and concerted action.'"  *Fisk v. Letterman*, 401 F. Supp. 2d 362, 376 (S.D.N.Y. 2005) (internal citation omitted).  Mr. Zografidis has failed to plausibly allege concerted action between these attorneys and the government.

Finally, to the extent that Mr. Zografidis is attempting to bring Sixth Amendment claims of ineffective assistance of counsel, the Sixth Amendment does not afford a private right of action under the circumstances alleged in his complaint, and such claims must be dismissed.  *See McCurvin*, 2003 WL 223428, at *3.  In any event, Judge Meyer found that Mr. Zografidis failed to allege a plausible claim for ineffective assistance of counsel in his habeas petition.  (*Zografidis v. USA*, No. 3:18-cv-1566-JAM, ECF No. 62.)

### e.        *Claims Against State Grievance Committee*

Mr. Zografidis has also named the Statewide Grievance Committee and the "Danbury Grievance Panel."  (Compl., ECF No.1, at 16-17.)  As far as I can tell from the face of the complaint, Mr. Zografidis attempted to initiate a grievance proceeding against Attorney Dimyan, who represented Mr. Zografidis in business matters relating to a commercial lease.  (*Id.*)  He alleges that the Statewide Grievance Committee was "ignorant and negligent" and failed to conduct a thorough investigation into his claims.  (*Id.*)

The Statewide Grievance Committee and the Danbury Judicial District Grievance panel are immune from suit as state agencies.  The Eleventh Amendment to the United States Constitution deprives the federal courts of power over suits "commenced or prosecuted against one of the United States by Citizens of another state."  U.S. Const. amend. XI.  While the literal text of the amendment does not bar suits against a state by its *own* citizens, the Supreme Court has repeatedly held that the amendment and the related doctrine of sovereign immunity imply such a bar.  In *Hans v. Louisiana*, 134 U.S. 1 (1890), a Louisiana citizen sued his home state, claiming that the text of the amendment did not forbid him from doing so.  The Supreme Court disagreed and held that, even when a state is sued by its own citizen, it "cannot be made the subject of judicial cognizance unless the state consents to be sued or comes itself into court . . . ."  *Id.* at 20; *see also*

*Empls. of Dep't of Pub. Health & Welfare, Missouri v. Dep't of Pub. Health & Welfare*, *Missouri*, 411 U.S. 279, 280 (1973) ("Although the Eleventh Amendment is not literally applicable since petitioners who brought suit are citizens of Missouri, it is established that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State."). Even though Mr. Zografidis is from Connecticut and is suing Connecticut's Grievance Committee, the Committee is part of the state and entitled to immunity. His claims against the Statewide Grievance Committee and the Danbury Grievance Panel must be dismissed. *Mele v. State of Connecticut*, No. 3:06-cv-1571 (JCH), 2007 WL 484618, at *3 (D. Conn. Feb. 6, 2007) (dismissing claims against Statewide Grievance Committee on initial review.)

### f.    Claims against remaining individuals

Finally, Mr. Zografidis has also named several private individuals, including Joseph Gega, Joseph Dimyan, and Christos Papachristou. (Compl., ECF No. 1, at 16-17.) Mr. Zografidis explains that he operated a café and alleges that Gega, his former landlord, Dimyan, his former commercial attorney, and Papachristou, who had contracted to purchase the café, conspired to defraud him out of the lease agreement. (*Id.*) This is essentially the same claim that Judge Chatigny dismissed in Mr. Zografidis' first civil action in 2014, and it must be dismissed here for the same reasons. "There is no allegation in the complaint that Dimyan and Gega are state or local officials and there is no allegation that they conspired with state or local officials to deprive the plaintiff of his rights under federal law. . . . Moreover, for a person who has been defrauded in connection with a lease, any legal remedy for the alleged fraud usually is available only in state court, not federal court." (*Zografidis v. Dimyan, et al.*, No. 3:14-cv-666-RNC.) The same rationale applies to Papachristou as well.

Even if I were to interpret his complaint as raising a common law fraud claim against these individuals, as directed by *Pabon v. Wright*, 459 F.3d 241 (2d Cir. 2006) and *Phillips v. Girdich*, 408 F.3d 124 (2d Cir. 2006), the complaint still fails to state a claim.  Federal courts are courts of "limited jurisdiction," meaning that they cannot hear just any case.  *Kokkonen v. Guardian Life Ins. Co. of Am.* 511 U.S. 375, 377 (1994).  In order for a federal court to exercise subject matter jurisdiction over a claim, a plaintiff must set forth a colorable claim arising under the Constitution or federal statute, which creates federal question jurisdiction, or allege that the parties are citizens of different states and the amount in controversy exceeds $75,000, which creates diversity jurisdiction.  *See* 28 U.S.C. § 1331; 28 U.S.C. 1332; *see also Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 363 (2d Cir. 2000).  Mr. Zografidis has not claimed that any federal statute provides a cause of action for this lease dispute in federal court, nor has he alleged that the parties are of diverse citizenship.  To the extent that his complaint raises a common law fraud claim against these individuals, such claims must be dismissed.

Mr. Zografidis has also named a Ted Lee, Chris Anderson, and David Solano.  (Compl., ECF No. 1, at 18-19.)  He alleges that Lee and Anderson were confidential witnesses who lied about participating in a controlled drug purchase with him.  (*Id.*)  He alleges that Solano was a confidential informant who lied under oath during his *Fatico* hearing.  (*Id.*)  It is well settled that a witness has absolute immunity from § 1983 liability based on the substance of testimony. *Briscoe v. LaHue*, 460 U.S. 325, 329 (1983) (" . . . § 1983 does not allow recovery of damages against a private party for testimony in a judicial proceeding.").  The Second Circuit has held that this immunity does not "cover extra-judicial conspiracies between witnesses and the prosecutor to give false testimony." *San Filippo v. U.S. Tr. Co. of New York*, 737 F.2d 246, 255 (2d Cir. 1984). Even assuming that these individuals lied, there is no allegation that they conspired with the

government, let alone an allegation that would pass *Iqbal's* plausibility test.  They are thus entitled

to immunity and the claims against them must be dismissed.

**IV.    MOTION FOR APPOINTMENT OF COUNSEL**

Finally, Mr. Zografidis has moved for appointment of counsel.  (ECF No. 6.)  28 U.S.C. §

1915(e)(1) provides that a "court may request an attorney to represent any person unable to afford

counsel."  Civil litigants like Mr. Zografidis, however, unlike criminal defendants, "do not have a

constitutional right to the appointment of counsel."  *Mustafa v. Stanley*, No. 3:19-cv-1780 (VAB),

2020 WL 6536910, at *2 (D. Conn. Nov. 6, 2020).   Rather, a district court has "substantial

discretion when deciding whether to appoint *pro bono* counsel to an indigent litigant in a civil

case."  *Richard v. Strom*, No. 3:18-cv-1451 (CSH), 2021 WL 5828065, at *1 (D. Conn. June 4,

2021) (citing *Ferrelli v. River Manor Health Care Ctr.* 323 F.3d 196, 203 (2d Cir. 2003)).

Mr. Zografidis' motion should be denied, as he has not demonstrated that he is indigent,

nor has he made a showing of some likelihood of merit of his claims.  The District of Connecticut

Local Rules provide that a court should consider, among other things, a party's ability or inability

to afford legal counsel and the apparent merit of the party's claims or defenses.  D. Conn. L. Civ.

R. 83.10(c)(1).  The standard for determining whether a plaintiff can afford counsel is the same

for determining whether a plaintiff is indigent for the purposes of *in forma pauperis* status.

*Sardarian v. Fed. Emergency Mgmt. Agency*, No. 3:19-cv-910 (CSH), 2019 WL 8331443, at *2

(D. Conn. June 19, 2019) (applying the standard in *Adkins* to a motion for appointment of counsel).

I have already recommended that Mr. Zografidis' motion to proceed *in forma pauperis* be denied.

Further, he has not made a showing of any likelihood of merit of his claims, as I have recommended

that his claims be dismissed in their entirety.   Accordingly, I recommend that his motion for appointment of counsel be denied as well.

## V.   CONCLUSION

For the foregoing reasons, I recommend that Judge Covello deny Mr. Zografidis' IFP motion.  I further recommend that Judge Covello dismiss his claims for failure to state a claim for relief as they are barred by the statute of limitations and to the extent that his claims have not yet accrued, they are barred by the doctrine of *Heck v. Humphrey*.   Additionally, a number of the Defendants named are immune from suit.  I further recommend that dismissal of the complaint – but not the denial of the IFP motion – be without prejudice.  Finally, I recommend that his motion for appointment of counsel be denied.  If my recommendation is accepted, this would mean that if Mr. Zografidis paid the $402 filing fee, he could then file an amended complaint attempting to cure the defects cited in this recommended ruling.  There may be no cure for those defects, but *pro se* plaintiffs are usually permitted at least one try.  *See*, *e.g.*, *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (*pro se* plaintiffs typically permitted "leave to amend at least once").

This is a recommended ruling by a magistrate judge. Fed. R. Civ. P. 72(b)(1); D. Conn. L. Civ. R. 72.1(C).  **If Mr. Zografidis wishes to object to my recommendation, he must file that objection with the Clerk of the Court within fourteen days.**  Fed. R. Civ. P. 72(b)(2); D. Conn. L. Civ. R. 72.2(a).  If he does not do so, he may not thereafter assign as error any claimed defect in this recommended ruling.  D. Conn. L. Civ. R. 72.2(a).  Failure to file a timely objection will also preclude appellate review.  *See* 28 U.S.C. § 636(b)(1); *Small v. Sec'y of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir. 1989) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision."); *accord Impala v. U.S. Dept. of Justice,* 670 F. App'x 32 (2d Cir. 2016) (summary order).

*/s/ Thomas O. Farrish*

Hon. Thomas O. Farrish
United States Magistrate Judge